# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACQUES SAADE, | \* |
| | \* |
| Plaintiff | \* |
| | \* |
| v. | \* |
| | \* |
| PENNYMAC LOAN SERVICES, LLC, | \* |
| PENNYMAC MORTGAGE INVESTMENT | \* |
| TRUST HOLDINGS I, LLC, PNMAC | \* |
| MORTGAGE CO. LLC, DEUTSCHE | \* CIVIL ACTION NO. 15-CV-12275-IT |
| BANK AS TRUSTEE OF PENNYMAC | \* |
| LOAN TRUST 2011-NPL1, MORTGAGE | \* |
| ELECTRONIC REGISTRATION | \* |
| SYSTEMS, INC., CHRISTIANA TRUST, | \* |
| WILMINGTON SAVINGS FUND SOCIETY, | \* |
| FSB, SPECIALIZED LOAN SERVICING, LLC, | \* |
| JENNIFER KIRKWOOD, | \* |
| CITIMORTGAGE, INC., CITIBANK N.A., and | \* |
| MORTGAGE LENDERS NETWORK, INC., | \* |
| | |
| Defendants. | |

## MEMORANDUM AND ORDER

October 17, 2016

TALWANI, D.J.

Pro Se Plaintiff Jacques Saade's Second Amended Complaint ("Complaint") [#56], alleges thirteen causes of action stemming from his attempt to refinance his home mortgage loan. The PennyMac Defendants,[1] Citi Defendants,[2] and Jennifer Kirkwood ("Kirkwood") have moved to dismiss the complaint in its entirety. Mot. Dismiss [## 59, 74, 82]. A Magistrate Judge issued a

---

[1] The "PennyMac Defendants" refers to PennyMac Loan Services, LLC, PennyMac Mortgage Investment Holding I, LLC, PNMAC Mortgage Co. LLC, Deutsche Bank as Trustee of PennyMac Loan Trust 2011-NPL 1, Mortgage Electronic Registration Systems, Inc., Christiana Trust, Wilmington Savings Fund Society, and Specialized Loan Servicing, LLC.
[2] The "Citi Defendants" refers to CitiMortgage, Inc. and CitiBank, N.A.

1

Report and Recommendation [#98] recommending that the motions to dismiss be granted. Plaintiff timely filed objections to the Magistrate Judge's report. Verified Obj. ("Obj.") [#106]. After considering Plaintiff's objections and reviewing the objected to portions of the Report and Recommendation [#98] de novo, the court finds that Plaintiff's objections are without merit. Accordingly the court ADOPTS the Report and Recommendation [#98] and provides the following discussion as to several of the objections raised by Plaintiff.

    A. DISCUSSION

        1. Plaintiff's Objection to the Magistrate Judge's Finding that Count I Failed to State a Claim.

The Magistrate Judge's Report and Recommendation found that Plaintiff failed to adequately allege facts to support his negligent and intentional misrepresentation claim under Count 1. Plaintiff's Objection argues that Citi Defendants breached Mass. Gen. Laws ch. 93A by falsely assuring him that if he submitted modified monthly payments his home loan would be refinanced. Obj. 5 [#106] ("Plaintiff was instructed and induced to believe that the requisite for refinancing was to make several modified monthly payments, and that making these modified monthly payments will finalize the refinancing after three month[s] of compliance making these payments pursuant to the refinancing agreement, Id. Par. 172. Plaintiff complied with Citi's instruction and made the modified monthly payments pursuant to the agreement."). Plaintiff avers that he sent modified refinance "trial period" payments pursuant to a refinance agreement, and that Citi Defendants' failure to comply with the agreed upon terms of the refinancing plan constitute an unfair and deceptive trade practice.

    The Objection states,

> In this instant matter [for] more than a year defendants kept misrepresenting that plaintiff did not provide requested documents for the refinancing review when plaintiff submitted same on countless occasions. In addition, plaintiff was told in person at Hynes Auditorium that he was approved for refinancing, this was another misrepresentation when two days later he was notified by defendant SLS that he was in default and that SLS was pursuing foreclosure proceeding against the plaintiff when he had made more

than a year of the agreed upon modified monthly payments- as turned out [] no such refinancing approval. In short these are allegations well pled that demonstrated the defendants' unfair conducts and breach of parties agreements that entitled the plaintiff to relief under ch. 93A.

Obj. 13-14 [#106].

Reading Plaintiff's allegations liberally, Plaintiff suggests that Count I raises a chapter 93A claim against Citi Defendants for violating the Home Affordable Modification Program ("HAMP"). Under HAMP, home loan servicers assess eligibility for a loan modification using a set of guidelines promulgated by the Treasury Department, and if the borrower meets those criteria, "the guidelines direct the servicer to offer that individual a Trial Period Plan ('TPP')" as a precursor to obtaining a permanent modification." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228 (1st Cir. 2013) (quoting Markle v. HSBC Mortg. Corp. (USA), 844 F.Supp.2d 172, 177 (D.Mass.2011)). If the borrower makes the required monthly payments, provides the necessary documentation, and maintains eligibility, the guidelines state that the servicer should offer the borrower a permanent loan modification. Id. at 229. Courts have found that a violation of HAMP that is itself unfair or deceptive can create liability under Chapter 93A. Newell v. America's Serv. Co., 2013 WL 4805060, * (D. Mass. Sept. 9, 2013) ("In evaluating Chapter 93A claims premised on violations of the HAMP guidelines, sessions of this court have routinely held that a viable Chapter 93A claim will lie only if the activity would be independently actionable under 93A as unfair or deceptive."); Speleos v. BAC Home Loans Serv., L.P., 824, F. Supp. 2d 226, 234 (D.Mass. 2011) ("A violation of HAMP that is unfair or deceptive in and of itself can, therefore, create a viable claim under Chapter 93A."). The Trial Period Plan contemplated by HAMP are uniform, four page agreements, executed by servicers and borrowers. Stagikas v. Saxon Mortg. Services, Inc., 795 F.Supp.2d 129, 133 (D. Mass. 2011); Durmic v. J.P. Morgan Chase Bank, NA, 2010 WL 4825632, *3 (D. Mass. Nov. 24, 2010) ("The TPP is a Fannie Mae/Freddie Mac 'Uniform Instrument' that has the appearances of a contract.'").

Plaintiff's attempt to fit his allegations into this framework fails. Plaintiff's pleadings do not allege that the parties executed a written Trial Period Plan or other written agreement related to the modified monthly payments. An oral agreement made by Citi Defendants and Plaintiff concerning modified monthly payments is not enforceable. Under Mass. Gen. Laws ch. 259 § 1, any agreement concerning a mortgage, including a modification of the loan terms, must be in writing. See French v. Chase Bank, N.A., 2012 WL 273724, *2 (D. Mass. Jan. 31, 2012). Plaintiff's allegations that he relied on Defendants' statements and submitted modified payments so that his loan would be modified is insufficient under Chapter 93A to state a cause of action. There must also be some allegation that the parties executed a written contract concerning the modified payments. Finding no such allegation in any of Plaintiffs' pleadings, the court agrees with the Report and Recommendation [#98], and finds that Plaintiff's claims under Count 1 shall be dismissed.

2. Plaintiff's Objection to the Magistrate Judge's Finding that Count V Failed to State a Claim.

The Magistrate Judge's Report and Recommendation recommended dismissing Plaintiff's Fair Credit Reporting Act claim against Specialized Loan Servicing, LLC ("SLS") because Plaintiff failed to specify the section of the Fair Credit Reporting Act that was violated, and because he failed to allege facts showing how the Act was violated. R&R 18 [#98]. In his Objection, Plaintiff argues that SLS did not have a lawful right to report Plaintiff to credit reporting agencies, and that the information SLS provided regarding Plaintiff was inaccurate in violation of 15 U.S.C. § 1681s-2(a)(1)(A) and § 1681s-2(a)(1)(B). Obj. 27 [#106]. Plaintiff's claim is barred, however, because furnishers' liability for reporting inaccurate credit information was expressly limited by Congress in the Fair Credit Reporting Act. 15 U.S.C. § 1681s-2(c)(1); Chiang v. Verizon New England, Inc., 595 F.3d 26, 35 (1st Cir. 2010) (noting that Congress expressly limited furnishers' liability by prohibiting private suits and that consumers have no private right of action if the furnisher does not

4

reasonably investigate a consumer's claim despite direct notification from the consumer); Cunha v. LVNV Funding, LLC, 2015 WL 5737134, *3 (D. Mass. Sept. 30, 2015) ("Section 1681s-2 does not provide a private right of action to consumers who dispute credit information directly with a furnisher of information."). While Plaintiff argues that he disputed SLS' furnishing of inaccurate credit information, there is no private right of action even if SLS did not follow up on Plaintiff's dispute. Id.

Plaintiff's argument that he seeks to recover under Mass. Gen. Laws ch. 93A for SLS's alleged violation of the Fair Credit Reporting Act is also unavailing. The Fair Credit Reporting Act specifically preempts state law. "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under 1681s-2." 15 U.S.C. § 1681t(b)(1)(F). Thus, to the extent that Plaintiff seeks to allege a chapter 93A claim based on a violation of the Fair Credit Reporting Act, this claim is pre-empted. Cunha, 2015 WL 5737134 at *5 ("To the extent [plaintiff's] Chapter 93A claim is premised on an unfair credit reporting, failure to correct credit information, or failure to investigate a disputed debt, it is pre-empted by the FRCA."); Catanzaro v. Experian Info. Sol., Inc., 671 F. Supp. 2d 256, 262 (D. Mass. 2009) ("[B]ecause the Court will not sanction the use of Chapter 93A as a end run around state and federal statutory schemes, it finds that plaintiff's Chapter 93A claims are preempted."). Accordingly, the Court agrees with the recommendation that Plaintiff's claims under Count V shall be dismissed.

3. Plaintiff's Objection to the Magistrate Judge's Finding that Count X Failed to State a Claim.

Plaintiff also objects to the Magistrate Judge's recommendation that Plaintiff's claim that Kirkwood violated the federal and state fair debt collection practices acts be dismissed. The Magistrate Judge found the allegations under Count X failed to state a claim, and found that Kirkwood's actions were protected under Massachusetts state law by the litigation privilege. The

Plaintiff argues in his Objection that the litigation privilege cannot shield lawyers from the Massachusetts Fair Debt Collection Practices Act nor the federal Fair Debt Collection Practices Act, and that the facts alleged demonstrate that Kirkwood willfully disregarded the collection laws and threatened Plaintiff. Obj. 32 [#106]. The court finds, however, that Plaintiff's allegations fail to state a cause of action against Kirkwood, and shall be dismissed.

Per the complaint, Plaintiff sent a demand letter to PennyMac Defendants putting them on notice of Plaintiff's claim that they allegedly violated the fair debt collection statutes and informing them that they did not have any lawful interest in his property. Compl. ¶ 253 [#56]. Kirkwood, as PennyMac's attorney, sent Plaintiff a letter in response to his demand. Compl. ¶ 254, Ex. 13 [# 56, 56-4]. The portion of the letter cited by Plaintiff as a violation of the fair debt collection statutes reads:

> Furthermore, I would suggest that any litigation commenced in relation to these claims would constitute a frivolous action in violation of Massachusetts law, as well as a violation of Rule 11 of the Massachusetts Rules of Civil Procedure and Chapter 231 § 59H of the Massachusetts General Laws. If you proceed with any claims, BMPC and PennyMac will vigorously defend such action and in the event you are unsuccessful, BMPC and Penny Mac will seek an award of their fees and costs for defending such action.

Compl. Ex. 13 [#56-4].

While both the federal and Massachusetts fair debt collection practices acts impose strict liability on debt collectors, the letter sent by Kirkwood is not a violation of either statute. Mass. Gen. Laws. ch. 93A, § 49 deems the following to be unfair, deceptive, or unreasonable consumer debt collection practices: (a) the creditor communicates, threatens to communicate, or implies the fact of such debt to a person other than the person who might reasonably be expected to be liable for the debt except with the written permission of the debtor; (2) the creditor communicates directly with the alleged debtor after notification from an attorney representing such debtor that all further communications concerning the debt should be addressed to the attorney; (3) the creditor

communicates with the debtor in such a manner as to harass or embarrass the debtor, such as by unreasonable hours or frequency of communication, threats of violence, use of offensive language, or by false threats of action; or (4) the creditor communicates with the debtor through the use of forms or instruments that simulate judicial process. Mass. Gen. Laws Ch. 93 §49. The letter sent by Kirkwood does not violate any of these prohibitions.

Likewise, the letter does not violate the federal Fair Debt Collection Practices Act, which prohibits the false, deceptive, or misleading representation or means in connection with the collection of any debt, the threatening to take action that cannot legally be taken or that is not intended to be taken, or the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(5); § 1692f(6)(A). Kirkwood's statement that her clients will vigorously defend themselves does not violate any of the prohibitions listed under the federal statute.

Furthermore, the letter was sent in response to Plaintiff's Mass. Gen. Laws ch. 93A demand letter. Mass. Gen. Laws ch. 93A requires a plaintiff to send a demand letter so that a respondent can tender a settlement offer before suit may be filed. Mass. Gen. Laws. ch. 93A, § 9(3); Thorpe v. Mut. of Omaha Ins. Co., 984 F.2d 541, 544 (1st Cir. 1993) (one reason for the demand letter requirement is "to encourage negotiation and settlement."). Kirkwood's letter, which offered to "consider your eligibility for a loan modification or other loss mitigation that may be available, in an attempt to help avoid foreclosure on the [] referenced property," Compl. Ex. 13 [#56-4], meets this goal of encouraging negotiation and settlement. To impose liability on an attorney for sending a letter in response to a Chapter 93A demand would vitiate the very purpose of demand requirement. For the foregoing reasons, Count X shall be dismissed.

    4. Plaintiff's Objection to the Magistrate Judge's Finding that Count XI Failed to State a Claim.

Plaintiff objects to the Magistrate Judge's finding that he did not allege any promise made by

7

any of the defendants that induced reliance and thus he failed to state a claim under the doctrine of promissory estoppel. According to Plaintiff, his complaint alleged that: (1) Defendants promised that modified payments would finalize his refinancing request; (2) Defendants stated that they would consider Plaintiff's payoff and refinancing proposal, and (3) Citi Defendants' representative at the Hynes Convention Center promised that the refinancing was approved. Obj. 33-34 [#106]. The complaint, however, does not set forth the promises Plaintiff articulates in his Objection. Instead, the complaint alleges that the refinancing process was convoluted, and that Plaintiff had to resubmit duplicate information repeatedly. Indeed, even the Objection notes that Defendants never finalized the refinancing, and that despite receiving a payoff offer, Citi Defendants failed to finalize the payoff. Compl. ¶¶ 263-265 [#56].

Even if Plaintiffs' revision of the allegations in the Complaint are accepted, the court finds that Plaintiff fails to state a claim for promissory estoppel. An element of promissory estoppel is that the party relying on the alleged promise has to demonstrate that reliance was reasonable. Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115, 1124 (1st Cir. 1995) ("An element of promissory estoppel is that party invoking it must have *reasonably* relied on the alleged promise to his detriment.") (emphasis original). Plaintiff consistently alleged elsewhere in the complaint that the refinancing process was convoluted and that Defendants gave Plaintiff contradictory information. In such a situation, reliance on the purported promises of Defendants was not reasonable. Trifiro v. New York Life Ins. Co., 845 F.3d 30, 33-34 (1st Cir. 1988) ("The conflicting content of [the defendant's] oral statement with [his] written statement . . . should have placed [the plaintiff] on notice that he should not rely on either statement."). Given the uncertain status of his home loan modification, it was not reasonable for Plaintiff to rely on Defendants' promises, therefore Plaintiff's claim under Count XI shall be dismissed.

B. CONCLUSION

Having reviewed all of Plaintiff's objections to the Magistrate Judge's Report and Recommendation [#98], the court finds Plaintiff's remaining objections to be without merit. The court therefore ADOPTS the Magistrate Judge's Report and Recommendation [#98]. PennyMac Defendants' Motion to Dismiss [#59], Citi Defendants' Motion to Dismiss [#74] and Jennifer Kirkwood's Motion to Dismiss [#82] are GRANTED.

IT IS SO ORDERED.

Date: October 17, 2016               /s/ Indira Talwani
                                     United States District Court